UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID A. MAPLES,

Petitioner,

vs.

CASE NO. 00-CV-71718-DT
HONORABLE VICTORIA A. ROBERTS

JIMMY STEGALL,

Respondent.

_____/

## OPINION AND ORDER

This habeas corpus matter is pending before the Court on remand from the United States

Court of Appeals for the Sixth Circuit. The question on remand is whether Petitioner was

prejudiced by defense counsel's erroneous advice that Petitioner could appeal a speedy trial issue

after pleading guilty. The determination of this question requires an assessment of Petitioner's

underlying claim that his right to a speedy trial was violated.

## I. Background

In 1993, Petitioner was charged with delivery of 50 to 224 grams of cocaine and

conspiracy to deliver 50 to 224 grams of cocaine. On September 22, 1995, Petitioner pleaded

guilty to the delivery charge, see Mich. Comp. Laws § 333.7401(1), and the prosecutor dismissed

the conspiracy charge. Petitioner alleges that his trial attorney advised him that his plea would

not preclude him from arguing on appeal that his right to a speedy trial had been violated.

The trial court sentenced Petitioner to imprisonment for a minimum of ten years and a

maximum of twenty years. One of the issues Petitioner argued on appeal was whether the trial

court's denial of Petitioner's motion to dismiss on speedy trial grounds was clearly erroneous. The Michigan Court of Appeals affirmed Petitioner's conviction after determining that Petitioner's unconditional guilty plea waived review of his speedy trial claim and his related ineffective-assistance-of-counsel claim. *See People v. Maples*, No. 196975 (Mich. Ct. App. Nov. 4, 1997). The Michigan Supreme Court denied leave to appeal. *See People v. Maples*, No. 110944 (Mich. Sup. Ct. Sept. 28, 1998).

Petitioner subsequently filed a motion for relief from judgment in which he alleged, among other things, that his trial attorney should have realized that Petitioner's speedy trial claim was not preserved for appeal. The trial court denied Petitioner's motion after concluding that it was bound by the state appellate court's holding on Petitioner's speedy trial claim. The Michigan Court of Appeals denied leave to appeal the trial court's decision "for failure to meet the burden of establishing entitlement to relief under MCR 6.508." *People v. Maples*, No. 218838 (Mich. Ct. App. Oct. 21, 1999). The clerk of the Michigan Supreme Court rejected as untimely Petitioner's subsequent application for leave to appeal.

On April 11, 2000, Petitioner filed his *pro se* Habeas Corpus Petition under 28 U.S.C. § 2254. The second claim alleges that the trial court erred in denying Petitioner's speedy trial motion. However, in a reply to the responsive pleading, Petitioner alleged that his trial attorney erroneously advised him about the appealability of his speedy trial claim and that the advice constituted ineffective assistance of counsel.

On October 12, 2001, the Court denied the habeas petition on the grounds that Petitioner's claims were waived by his guilty plea, were not cognizable, or lacked merit. The Court did not specifically address the ineffective-assistance-of-counsel claim raised in

2

Petitioner's reply brief.

The Court initially declined to grant a certificate of appealability on any of Petitioner's claims. However, when Petitioner alleged in a subsequent application for a certificate of appealability that the Court had not adjudicated his ineffective-assistance-of-counsel claim, the Court granted a certificate of appealability on that claim.

The Sixth Circuit issued a decision on August 19, 2003. *See Maples v. Stegall*, 340 F.3d 433 (6th Cir. 2003). It determined that the inaction of prison officials was "cause" for Petitioner's procedural default of failing to timely raise his ineffective-assistance-of-counsel claim in the Michigan Supreme Court. After also determining that Petitioner was prejudiced by the procedural default, the Sixth Circuit discussed the merits of Petitioner's ineffectiveness claim. It concluded that defense counsel's patently erroneous advice concerning the appealability of Petitioner's speedy-trial claim fell below an "objective standard of reasonableness" and could not be considered "sound trial strategy."

Having found that defense counsel's performance was deficient, the Sixth Circuit considered whether Petitioner was prejudiced by the deficient performance. Because Petitioner has stated that he would have insisted on proceeding to trial were it not for his attorney's erroneous advice, the Sixth Circuit stated that Petitioner had satisfied the prejudice standard articulated in *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Sixth Circuit went to hold that *Hill v. Lockhart* requires courts to "analyze the substance of the petitioner's underlying claim" because "this inquiry will be dispositive to the resolution of the habeas action 'in many guilty plea cases.'" *Maples*, 340 F.3d at 440 (quoting *Hill v. Lockhart*, 474 U.S. at 59). Because no court has addressed Petitioner's speedy trial claim on the merits, the Sixth Circuit vacated this Court's

3

judgment and remanded the case for a determination of whether Petitioner's speedy-trial rights were violated. The parties have briefed the issue, and the case is now ready for a decision.

## II. Discussion

Petitioner alleges through appointed counsel that his trial attorney's advice regarding the appealability of the speedy trial claim amounted to deficient performance and that he was prejudiced by the incorrect advice because his speedy trial claim has merit. Petitioner contends that over two years expired from the time of his arrest to his trial and that only nine days, or at most, about four months of the delay, are attributable to him. Respondent contends that Petitioner's speedy trial claim is meritless and, therefore, Petitioner suffered no prejudice by the failure to advise him that he would waive the claim by pleading guilty.

### A. The Standard of Review for Ineffective-Assistance-of-Counsel Claims

The Court must review Petitioner's ineffective-assistance-of-counsel claim *de novo*. *Maples*, 340 F.3d at 436-37. To show a violation of the right to effective assistance of counsel, Petitioner must establish that (1) his attorney's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. A deficient performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Because of the difficulties inherent in evaluating defense counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of

4

reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

To demonstrate ineffective assistance of counsel in the context of a guilty plea, a habeas petitioner must show that his attorney's representation fell below an objective standard of reasonableness or outside the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. at 56-59. The prejudice prong focuses on whether defense counsel's constitutionally ineffective performance affected the outcome of the plea process. *Id.* at 59. The petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

The Sixth Circuit already has determined that defense counsel's erroneous advice about the appealability of Petitioner's speedy-trial claim fell below an objective standard of reasonableness and could not possibly be considered sound trial strategy. Thus, the deficient performance prong has been satisfied.

In addition, Petitioner has said that he would have insisted on going to trial, rather than plead guilty, were it not for his attorney's erroneous advice. "On the surface, at least, this [assertion] satisfies the prejudice standard as articulated in *Hill v. Lockhart*. . . ." *Maples*, 340 F.3d at 440. However, resolution of the "prejudice" inquiry also depends on whether the affirmative defense likely would have succeeded. *Hill v. Lockhart*, 474 U.S. at 59. The Sixth Circuit has interpreted this statement from *Hill v. Lockhart* to mean that courts must always analyze the substance of the petitioner's underlying claim (*e.g.*, whether there was a speedy-trial violation) to assess whether the petitioner suffered prejudice. *Maples*, 340 F.3d at 440.

5

Accordingly, the Court will proceed to analyze the merits of Petitioner's speedy trial claim.

## B. The Right to a Speedy Trial

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. CONST. VI. "[A]ny inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case. . . ." *Barker v. Wingo*, 407 U.S. 514, 522 (1972). To facilitate such an analysis, the Supreme Court has devised "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id.* at 530. Four factors which courts should assess in determining whether a particular defendant has been deprived of the right to a speedy trial are: the length of the delay; the reason for the delay; the defendant's assertion of the right; and prejudice to the defendant. *Id.* These four factors are related to one another, and they "must be considered together with such other circumstances as may be relevant." *Id.* at 533.

## 1. Length of the Delay

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* at 530. The interval between accusation and trial must cross the threshold which divides ordinary delay from "presumptively prejudicial" delay because, by definition, the defendant cannot complain that he has been denied a speedy trial if the state promptly prosecuted his case. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992) (citing *Barker*, 407 U.S. at 530-31). Post-accusation delay approaching one year generally is deemed "presumptively prejudicial," *id.* at 652 n.1, but delays as long as five years have been held not to violate the right to a speedy trial. *See, e.g., Barker*, 407 U.S. at 533-36.

Petitioner and his co-defendant were arrested on August 4, 1993, and charged in a complaint and warrant issued on August 6, 1993. The jury trial began over two years later on September 20, 1995.[1] Because the post-accusation delay was more than a year, it must be deemed presumptively prejudicial.

## 2. Reason for the Delay

Closely related to the length of the delay are the reasons for the delay. *Barker*, 407 U.S. at 531. "The core task is determining which party shoulders the balance of blameworthiness for th[e] delay." *United States v. O'Dell*, 247 F.3d 655, 667 (6th Cir. 2001).

> [D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily, but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

*Barker*, 407 U.S. at 531 (footnote omitted).

### a. Delays in 1993 and 1994

The trial date initially was scheduled for October 19, 1993. That date and most of the other trial dates set in 1993 and 1994 were adjourned at the request of Petitioner or his co-defendant or as a result of motions they filed.[2] For example, on November 2, 1993, Petitioner filed a motion for supplemental discovery and a motion in limine, and, on or about December 9, 1993, he joined in his co-defendant's motion regarding the alleged violation of a twelve-day rule.

---

[1] Petitioner pleaded guilty after his trial commenced.

[2] Petitioner alleges that the trial date was adjourned on June 6, 1994, and on July 29, 1994, because he was in custody of the Michigan Department of Corrections and no one brought him to trial by way of a writ.

7

On January 10, 1994, Petitioner filed a motion to adjourn the trial date because his attorney was unavailable. This resulted in a short delay of only nine days. However, it appears that sometime after January 19, 1994, Petitioner's co-defendant filed a motion claiming that he had been entrapped. Proceedings on the entrapment motion took place over the next six months. A hearing on the motion was begun on February 4, 1994, and concluded on April 11, 1994.[3] Petitioner joined in the motion on April 29, 1994, which was the deadline for filing briefs on entrapment, and the trial court denied the motion on July 14, 1994. On July 29, 1994, Petitioner filed a motion to adjourn the trial to the next term. Finally, on November 18, 1994, and again on December 7, 1994, Petitioner's co-defendant moved to adjourn the trial.

The resolution of pretrial motions is a presumptively justifiable reason for a delay, which should not be attributable to the State. *See O'Dell*, 247 F.3d at 668 (citing *United States v. Schlei*, 122 F.3d 944, 987 (11th Cir. 1997); *United States v. Jones*, 91 F.3d 5, 8 (2d Cir. 1996)). Moreover,

> [w]here multiple defendants are charged in an indictment and no motion for severance has been granted, only one speedy trial clock governs the actions. . . . 'All defendants who are joined for trial generally fall within the speedy trial computation of the latest co-defendant.' *United States v. Blackmon*, 874 F.2d 378, 380 (6th Cir. 1989). 'The excludable delay of one co-defendant may be ascribed to all defendants.' *Blackmon*, 874 F.2d at 380; *see also United States v. Monroe*, 833 F.2d 95, 100 (6th Cir. 1987); *United States v. Pelfrey*, 822 F.2d 628, 634 (6th Cir. 1987); *United States v. Holyfield*, 802 F.2d 846, 847-48 (6th Cir. 1986), *cert. denied*, 479 U.S. 1090 (1987); *United States v. Papaleo*, 853 F.2d 16, 20 (1st Cir. 1988).

---

[3] The hearing was adjourned from February 25, 1995, to April 11, 1994, initially for the purpose of ascertaining whether Petitioner would testify and then for the purpose of taking Petitioner's testimony.

*United States v. Culpepper*, 898 F.2d 65, 66-67 (6th Cir. 1990).[4]

Petitioner apparently did not object to his co-defendant's requests for adjournments. And although he says in a recent affidavit that he asked his trial attorney several times to seek a separate trial, neither he nor his attorney moved to sever his case from his co-defendant's case. In fact, he concurred in some of his co-defendant's motions, including the entrapment motion. The Court therefore concludes that the delays occurring in 1993 and 1994 should be attributable to Petitioner.

### b. Delays in 1995

The parties did not file any motions to adjourn in 1995. The trial court adjourned the trial for two months on April 28, 1995, because it was involved in an unrelated trial. This delay, presumably the result of an overcrowded docket, must be attributed to the State. *Barker*, 407 U.S. at 531.

On June 22, 1995, the trial court adjourned the trial for five days without giving a reason, and, on June 27, 1995, the trial court adjourned the trial date for two months without giving a reason. Although unexplained delays must be attributed to the state, *United States v. Schreane*, 331 F.3d 548, 556 (6th Cir.) (quoting *Redd v. Sowders*, 809 F.2d 1266, 1269 (6th Cir. 1987)), cert. denied, __ U.S. __, 124 S. Ct. 448 (2003), less weight should be given to neutral reasons such as negligence or overcrowded dockets than to deliberate attempts to hamper the defense. *Barker*, 407 U.S. at 531. The Court is also mindful that Petitioner's trial began less than ten

---

[4] Although Culpepper brought his claim under the federal Speedy Trial Act, 18 U.S.C. § 1361, *et seq.*, a claim which passes muster under the Speedy Trial Act generally satisfies the requirements of the Sixth Amendment right to a speedy trial. *United States v. DeJesus*, 887 F.2d 114, 116 n.1 (6th Cir. 1989).

months after the co-defendant's last motion to adjourn the trial date.

### c. Summary

The Court believes that the delays in 1993 and 1994 were attributable to Petitioner or his co-defendant due to their motions. The delays in 1995 arguably were attributable to the State. However, the delays in 1995 amounted to less than a year, and they appear to be the result of negligence or an overcrowded docket, which is weighed less heavily against the government than intentional delay designed to gain a tactical advantage over the petitioner. *Barker*, 407 U.S. at 531. The Court concludes that Petitioner was more at fault for the delay in starting his trial than the State.

## 3. Assertion of the Right

The third factor in determining whether a defendant's right to a speedy trial has been violated is whether the defendant asserted the right. A "defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. And in this Circuit, a motion for reasonable bail is the functional equivalent of a demand for a speedy trial. *Cain v. Smith*, 686 F.2d 374, 384 (6th Cir. 1982).

On April 8, 1994, and again on April 29, 1994, Petitioner moved for release on bond. He claimed that he was being deprived of a speedy trial and that the delays were not attributable to him.[5] On January 3, 1995, August 22, 1995, and September 20, 1995, Petitioner unsuccessfully moved to dismiss the charges on the ground that his speedy trial rights were violated. Because of

---

[5] The trial court granted his motion, but he was sent from Macomb County Jail to St. Clair County Jail to await a hearing on a charge of violating probation. He was released from prison on January 10, 1995.

the force and frequency of the motions, the Court believes that the third factor (assertion of the right) weighs in Petitioner's favor.

### 4. Prejudice

The fourth and final factor to be analyzed is prejudice to the defendant. "A defendant must show that 'substantial prejudice' has resulted from the delay." *Schreane*, 331 F.3d at 557. Prejudice should be assessed in light of the following three defense interests which the speedy trial right was designed to protect: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious." *Id.*

### a. Inability to Find Larry Roberts

Petitioner alleges that his defense was impaired because, as a result of the delay, he was unable to contact co-defendant Larry Roberts, whose case was dismissed for lack of evidence at the preliminary examination. Petitioner contends that Roberts had agreed to testify that Petitioner was not involved in the charged crimes. Roberts' attorney, however, informed the prosecuting attorney before trial that he likely would advise Roberts not to testify on Fifth Amendment grounds. *See* Letter dated July 13, 1995, from Assistant Prosecutor James J. Sullivan to Petitioner's trial attorney, Daniel Feinberg. The Court concludes that Petitioner's inability to contact Larry Roberts did not prejudice him.

11

### b. James Murphy's Guilty Plea

Petitioner alleges that the delay in his trial also resulted in him being unable to use another co-defendant, James Murphy, to his advantage. Murphy stated in a letter dated August 9, 1993, that Petitioner did not give him any controlled substance, nor help him deliver narcotics to another person. *See* Petitioner's Brief After Remand, Exhibit B. However, the State reached a plea agreement with James Murphy during the delay in Petitioner's trial, and the agreement required Murphy not to testify at Petitioner's trial. *See id.,* Exhibit C.

Although "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," *Barker,* 407 U.S. at 531, the record does not demonstrate intentional use of pretrial delay to gain a tactical advantage over Petitioner. Moreover, Murphy's anticipated testimony on Petitioner's behalf likely would have been contradicted by Police Officer Hurley's testimony that Murphy identified Petitioner as Murphy's source of narcotics. *See* Brief in Support of Defendant's Concurrence in Co-Defendant's Motion to Dismiss, at unnumbered page 4. Had Murphy testified at trial, the jury might have concluded, as the trial court did after the entrapment hearing, that Murphy's testimony about Petitioner's noninvolvement in the offense was not credible. *See* Opinion on Defendants' Motion Relative to Entrapment, at 7. The Court concludes that the inability to use Murphy as a witness likely did not prejudice Petitioner.

Petitioner also alleges that he suffered from other forms of prejudice, namely, oppressive pretrial incarceration, loss of employment, and anxiety. Although the Court does not minimize these concerns, it should be noted that, for over seven months of the pretrial delay (from May 29, 1994, to January 10, 1995), Petitioner was in custody on an unrelated charge arising out of St.

Clair County. The sentence in this narcotics case would not have run concurrently to the sentence he was serving for another felony even if Petitioner had been tried and sentenced earlier. See MICH. COMP. LAWS § 333.7401(3).

Furthermore, "[w]hen prejudice has been found, the government's delay has typically been shockingly long. See, e.g., Doggett, 505 U.S. at 657 (six years); [United States v.] Brown, 169 F.3d [344, 351 (6th Cir. 1999)] (five and one-half years); United States v. Graham, 128 F.3d 372, 376 (6th Cir. 1997) (eight years)." Schreane, 331 F.3d at 559. Even assuming that Petitioner was prejudiced, the entire delay of twenty-five and one-half months was not "shockingly long" by Sixth Circuit standards. See id. The Court therefore concludes that the delay in Petitioner's case did not result in "substantial prejudice."

## III. Conclusion

To summarize, the delay of over twenty-five months weighs in Petitioner's favor. However, "presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria. . . ." Doggett, 407 U.S. at 656.

The second factor (reasons for the delay) weighs in the State's favor because the pretrial delay was largely the result of pretrial motions filed by Petitioner and his co-defendant. The delays in 1995, which the Court has attributed to the State, amounted to less than ten months, and they appear to have been due to negligence. On balance, Petitioner was more at fault than the State.

The third factor (assertion of the right) weighs in Petitioner's favor because Petitioner asserted his rights on several occasions. The fourth factor (prejudice) weighs in the State's favor because it does not appear that Larry Roberts would have testified for Petitioner if he could have

13

been located or that the State deliberately caused the delay to reach an agreement with James Murphy. In addition, the delay was not shockingly long.

The Court believes that the second and fourth factors are the critical factors in the balancing test. *See Atkins v. Michigan*, 644 F.2d 543, 548-49 (6th Cir. 1981) (noting that the primary focus of a speedy-trial claim is the reasonableness of the delay and that another crucial element in such a claim is the degree of prejudice). Those factors weigh in favor of the State, because the delays were largely attributable to Petitioner and they did not result in substantial prejudice.

The Court concludes that Petitioner's speedy trial claim lacks merit and that he likely would not have prevailed if he could have raised his speedy trial claim on appeal. Therefore, defense counsel's incorrect advice concerning whether Petitioner could appeal the denial of his speedy trial motions did not prejudice Petitioner. Because Petitioner has not satisfied both components of the test for ineffective assistance (deficient performance and resulting prejudice), it cannot be said that defense counsel was ineffective. Accordingly, the Application for the Writ of Habeas Corpus is **DENIED**.

Date: JUN - 9 2004

VICTORIA A. ROBERTS
UNITED STATES DISTRICT JUDGE

14